# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
TROY M. DAHL,                           )
                                        )
                   Plaintiff,           )
                                        )
         v.                             )        Civil Action No. 19-3267 (ABJ)
                                        )
STEPHEN DICKSON                         )
*Administrator, Federal*                )
*Aviation Administration, et al.*,      )
                                        )
                   Defendants.          )
_____)

## MEMORANDUM OPINION

On October 30, 2019, petitioner Troy M. Dahl, a licensed pilot, initiated this action seeking a writ of mandamus directing the National Transportation Safety Board ("NTSB") to act upon his pending appeal of a decision denying him a Federal Aviation Administration ("FAA") airman medical certificate.  Petition for Writ of Mandamus [Dkt. # 1] ("Pet.") at 5.[1]

On January 27, 2020, respondents Stephen Dickson, the Administrator of the FAA; the FAA; and the NTSB filed a motion to dismiss the petition, arguing that the Court lacks jurisdiction to issue the requested relief and that petitioner has failed to state a claim.  Respondents' Motion to Dismiss [Dkt. # 9] ("Mot.").  For the following reasons, the Court concludes that it lacks jurisdiction to intervene in this matter, and it will grant respondents' motion to dismiss.

---

1   Parts of the petition do not contain numbered paragraphs nor page numbers.  The page numbers referenced correspond to the PDF page numbers on the court's electronic filing stamp.

**BACKGROUND**

## I.      FAA Authority and Medical Certificates

Plaintiff "is a licensed pilot, holding [FAA] Commercial and Flight Instructor Certificates," who seeks "to exercise the privileges of those certificates."  Pet. ¶ 1.  In order to do so, he brings this action in furtherance of his efforts to obtain "an FAA issued airmen medical certificate."  *Id.*

Congress delegated authority to the Administrator of the FAA to "promote [the] safe flight of civil aircraft in air commerce."  49 U.S.C. § 44701(a).  The Administrator has the authority to prescribe regulations and standards that govern the "practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security."  49 U.S.C. § 44701(a)(5).  The Administrator must carry out responsibilities "in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation."  49 U.S.C. § 44701(c).

One regulation the FAA has prescribed in furtherance of that statutory authority is that, among other requirements, "[a] person may serve as a required pilot flight crewmember of an aircraft only if that person holds the appropriate medical certificate."  14 C.F.R. § 61.3(c)(1).[2]  "A person who meets [certain] medical standards . . . based on medical examination and evaluation of the person's history and condition, is entitled to an appropriate medical certificate."  14 C.F.R. § 67.3.  One of those standards is that pilots have "[n]o established medical history or clinical diagnosis of . . . [s]ubstance dependence."  14 C.F.R. §§ 67.107(a)(4), 67.207(a)(4), 67.307(a)(4).[3]

---

[2]     14 C.F.R. § 61.3(c)(2) lists some circumstances in which a medical certificate is unnecessary.  However, plaintiff does not allege that any of these circumstances apply to him.

[3]     Alcohol is a qualifying substance.  *See* 14 C.F.R. §§ 67.107(a)(4)(1), 67.207(a)(4)(1), 67.307(a)(4)(1).

> 'Substance dependence' means a condition in which a person is dependent on a substance . . . as evidenced by— (A) [i]ncreased tolerance; (B) [m]anifestation of withdrawal symptoms; (C) [i]mpaired control of use; or (D) [c]ontinued use despite damage to physical health or impairment of social, personal, or occupational functioning.

*Id.* §§ 67.107(a)(4)(ii), 67.207(a)(4)(ii), 67.307(a)(4)(ii).  If there is an established medical history or clinical diagnosis of substance dependence, the Federal Air Surgeon may still issue a medical certificate "where there is established clinical evidence . . . of recovery, including sustained total abstinence from the substance(s) for not less than the preceding 2 years."  *Id.* §§ 67.107(a)(4), 67.207(a)(4), 67.307(a)(4).

The mental standards for an airman medical certificate also require "[n]o substance abuse within the preceding 2 years."  14 C.F.R. §§ 67.107(b), 67.207(b), 67.307(b).  "Substance abuse" is defined as:

> (1) Use of a substance in a situation in which that use was physically hazardous, if there has been at any other time an instance of the use of a substance also in a situation in which that use was physically hazardous;

> (2) A verified positive drug test result, an alcohol test result of 0.04 or greater alcohol concentration, or a refusal to submit to a drug or alcohol test required by the U.S. Department of Transportation or an agency of the U.S. Department of Transportation; or

> (3) Misuse of a substance that the Federal Air Surgeon, based on case history and appropriate, qualified medical judgment relating to the substance involved, finds—

>> (i) Makes the person unable to safely perform the duties or exercise the privileges of the airman certificate applied for or held; or

>> (ii) May reasonably be expected, for the maximum duration of the airman medical certificate applied for or held, to make the person unable to perform those duties or exercise those privileges.

*Id.*

Congress provided the FAA with broad authority to suspend or revoke a number of different types of airman certificates, including medical certificates. The Administrator may reexamine an airman holding a certificate "at any time," 49 U.S.C. § 44709(a)(1), and "may issue an order amending, modifying, suspending, or revoking" a certificate if the FAA determines "that safety in air commerce or air transportation and the public interest require that action." *Id.* § 44709(b)(1)(A).

## II.    The Process for Appealing the Denial of a Medical Certificate

If the FAA denies a petitioner's attempt to obtain a medical certificate, the petitioner may appeal to the NTSB. *See* 49 U.S.C. § 44703(d)(1) ("An individual whose application for the issuance or renewal of an airman certificate has been denied may appeal the denial to the [NTSB].")). The appeal "must be filed with the Board within 60 days after the date on which notice of the Administrator's denial was served on the petitioner." 49 C.F.R. § 821.24(a). The NTSB is then required to review the decision. *See* 49 U.S.C. § 1133(1) ("The [NTSB] shall review on appeal . . . the denial, amendment, modification, suspension, or revocation of a certificate issued by the Secretary of Transportation under section 44703, 44709, or 44710 of this title.").

The NTSB has two stages of review:  (1) an evidentiary hearing before an NTSB Administrative Law Judge ("ALJ") who is empowered "to issue initial decisions," 49 C.F.R. §§ 821.35(b)(10), 821.42; and (2) an appeal to the full Board, which reviews the ALJ's decision and issues a final order. *See* 49 C.F.R. §§ 821.47–821.49. If the NTSB upholds the denial of an airman certificate, an individual may seek judicial review in either the courts of appeals or the district courts. *See* 49 U.S.C. § 44703(d)(3); 49 C.F.R. § 821.64.

### III. Factual and Procedural History of the Case

As petitioner acknowledges, in 1997 or 1998, he "had a traffic stop . . . involving reckless driving that involved the use of alcohol and driving."  Pet. ¶ 2.  It is not clear if petitioner was issued a citation or arrested at that time.  In 2000, though, he was arrested and convicted of "Operating Under the Influence" in Wisconsin.  *Id.* ¶ 3.

In March of 2007 and March of 2008, petitioner applied for and was issued medical certificates.  Pet. ¶ 5.  But, in 2008, he was arrested again, and in 2009 he was convicted of "Operating While Intoxicated" in Iowa.  *Id.* ¶ 4.  After this conviction, petitioner was found to have substance abuse issues pursuant to 14 C.F.R. § 67.207(b) by the Federal Air Surgeon.  *Id.* ¶ 6.

In 2011, petitioner was arrested once more for Driving Under the Influence in Iowa.  Pet. ¶ 7.  Subsequently, in July of 2012, the FAA found petitioner to be disqualified from holding a medical certificate due to his history of substance abuse.  *Id.* ¶ 8.  On January 22, 2014, petitioner re-applied for a medical certificate, but the application was denied for the same reason.  *Id.* at 3.  Petitioner also alleges that, at some point in 2014, the Federal Air Surgeon changed the statement of disqualification from "substance abuse" to "substance dependence," which "arbitrarily" affected his eligibility for the certificate.  *Id.* ¶ 10.  Petitioner argues that this decision was arbitrary and capricious because he had not engaged in any substance abuse within the preceding two years.  *Id.* at 3.  He contends that, while he may have been disqualified from holding a medical certificate in July of 2012, he became eligible in 2013, which was two years after the 2011 arrest.  *Id* at 4.

Petitioner avers that he then submitted medical documentation to show that he is not "substance dependent."  Pet. at 4.  Nevertheless, on May 11, 2016, petitioner received a "Final Denial" of medical certification from the Federal Air Surgeon.  *Id.* ¶ 11.  On May 27, 2016,

petitioner appealed the final denial to the NTSB.  *Id.* ¶ 12.  An Administrative Law Judge denied that petition in June of 2018.[4]  *Id.* ¶ 13.  He then appealed the ALJ's ruling to the full NTSB, pursuant to 49 C.F.R. § 821.47, on June 30, 2018.  *Id.* ¶ 14.  His brief in support of the appeal was filed on September 8, 2018, and the FAA responded on October 9, 2018.  *Id.*  So the matter has been fully briefed since that time, but the NTSB has not yet ruled on the appeal.  *Id.* ¶ 15.

With that appeal still pending, petitioner filed the petition that initiated this case.  Briefing is now complete on defendants' motion to dismiss.  *See* Mot.; Memorandum in Support of Motion to Dismiss [Dkt. # 9-1] ("Mem."); Petitioner's Memorandum in Opposition of Motion to Dismiss [Dkt. # 10] ("Opp."); Reply in Support of Defendants' Motion to Dismiss [Dkt. # 12] ("Reply").

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule

---

4       The petition states that the appeal was denied in June of 2016, but this must be a typo, because petitioner states that the appeal was heard "two years later" after it was filed in May of 2016, and he appealed that ruling in 2018.  *See* Pet. ¶¶ 12–14.

12(b)(6) case); *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

## Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**Failure to State a Claim**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state

a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

The petition filed in this case advances two claims: (1) "[p]etitioner is entitled to the issuance of a medical certificate"; and (2) "[a]lternatively, petitioner is entitled to an appeal the denial of issuance of a medical certificate." Pet. at 3–4. Petitioner has already appealed the denial of his application, but he explains that the problem for the Court to address is that the full NTSB has yet to render a decision on the appeal. *Id.* at 4–5. "Mr. Dahl is being denied his right to due process, [and] his right to appeal the arbitrary determination of the Federal Air Surgeon that he has a history of substance dependence." *Id.* at 5. In his demand for relief, petitioner asks the Court to "[d]irect the [NTSB] to issue a ruling in the pending appeal," and to award "such other relief … that the Court considers proper." *Id.* Because the Court lacks jurisdiction to issue a writ of mandamus directing the NTSB to issue its decision on the appeal, respondents' motion to dismiss will be granted.

The Mandamus Act, 28 U.S.C. § 1361, makes it clear that a court has jurisdiction to issue a writ of mandamus only if plaintiff demonstrates "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Id.* And "even if the [other] prerequisites have been met, the issuing

court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381 (2004).

"[A] writ of mandamus will issue 'only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable.'" *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980), quoting *United States ex rel. McLenan v. Wilbur*, 283 414, 420 (1931). "Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary[,] i.e., ministerial[,] if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required." *Beatty v. Washington Metro. Area Transit Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988), quoting *Jackson v. Kelly*, 557 F.2d 735, 737–38 (10th Cir. 1977) (brackets and emphasis omitted).

Here plaintiff has not alleged the failure to perform a clear and undisputable ministerial duty. The Board has a legal obligation to rule on the appeal, but "[t]here is no *per se* rule as to how long is too long to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quotation marks and citation omitted). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) ("*Core*"), quoting *Telecommc'ns. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*").[5]

---

5       Plaintiff has not filed an action under the Administrative Procedure Act to compel administrative action that has been unreasonably delayed, *see* 5 U.S.C. § 706(1), but the caselaw in that area is instructive.

In *TRAC*, the D.C. Circuit outlined six principles to consider in deciding whether a delay is unreasonable:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations and quotation marks omitted).

The D.C. Circuit has reiterated that these considerations "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *Core,* 531 F.3d at 855, quoting *TRAC*, 750 F.2d at 80. Indeed, "[e]ach case must be analyzed according to its own unique circumstances . . . . Each case will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984).

The first factor, whether the time the agency takes to make a decision is governed by a "rule of reason," has been characterized as the "most important" factor in the analysis. *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012), quoting *Core*, 531 F.3d at 855. Here, the order in which the NTSB decides appeals is in the order that it received them. Declaration of Kathleen Silbaugh [Dkt. # 9-4] ("Silbaugh Decl.") ¶ 8. NTSB regulations provide

for an expedited process for emergency appeals to the ALJ and to the Board, which has shorter deadlines for filing briefs.  49 C.F.R. §§ 821.52–57.  It is the Board's practice to dispose of an emergency appeal within sixty days of the appeal filing date.[6]  Silbaugh Decl. ¶ 10.  Thus, "the NTSB prioritizes emergency appeals, moving emergency cases to the top of the queue."  *Id.*  The Court finds that this is a reasonable way to determine the order in which the NTSB will issue decisions, and that this factor weighs in favor of respondents.

The second factor provides that "[i]f a specific deadline for final agency action is provided by Congress, the reasonableness of the delay can be measured in relation to this deadline." *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 38 (D.D.C. 2000), citing *In Re Center for Auto Safety*, 793 F.2d 1346, 1353 (D.C. Cir. 1986).  Congress has not specified any specific timeline by which the NTSB must render decisions, and thus this factor does not weigh in either direction.

Because the third and fifth factors are similar, courts tend to analyze them together.  *See, e.g.*, *In re Barr Labs., Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991) ("*TRAC's* third factor . . . overlaps with the fifth").  Here, the interest prejudiced by the delay is petitioner's career, and his ability to earn a living as a commercial airman.  The Court recognizes that this is of the utmost importance to petitioner, but delay cannot be said to be "less tolerable" because "human health and welfare are at stake."  *TRAC*, 750 F.2d at 80.  Therefore, these factors weigh only slightly in petitioner's favor.

The fourth factor, "the importance of 'competing priorities' in assessing the reasonableness of an administrative delay," weighs heavily in favor of defendants.  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003), citing *Barr Labs.*, 930 F.2d at 75–

---

6       Petitioner does not allege that he submitted an emergency appeal.

76.    The D.C. Circuit has put particular weight on this factor, declining "to grant relief, even though all the other factors considered in *TRAC* favored it, where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'"  *Mashpee*, 336 F.3d at 1100 (brackets omitted), quoting *Barr Labs.*, 930 F.2d at 75; *see also Am. Hosp. Ass'n*, 812 F.3d at 192 (affirming that "our precedent forecloses" mandamus relief "that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").  The Court finds it highly relevant that the requested relief would simply move petitioner's case ahead of the others that are awaiting a decision.[7]  As a result, the Court is not in a position to tell the Board that its time is up; nor would it be appropriate to interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."  *Barr Labs.*, 930 F.2d at 76; *see also In re Monroe Commc'ns. Corp.*, 840 F.2d 942, 946 (D.C. Cir. 1988) (courts "must give agencies great latitude in determining their agendas.").

---

7      In responding to the motion, petitioner says that he "does not argue that his appeal should be 'sent to the head of the line'; … instead, Petitioner argues that the NTSB should take on the task of rendering timely decisions in all non-emergency cases."  Opp. at 10.  That may be petitioner's general view, but the pending petition relates to his case only.  Pet. at 5.  Thus, his request would indeed necessitate "putting [him] at the head of the queue."  *Mashpee*, 336 F.3d at 1100.

As to the sixth factor, the Court notes that plaintiff has not alleged that there has been any impropriety underlying the agency's delay.  But because impropriety is unnecessary to hold that agency action is unreasonably delayed, this factor does not weigh in favor of either party.[8]

Petitioner is understandably frustrated by the length of time his case has been pending, and the Court is sympathetic to his desire to have his claim heard.  But, in considering all of the *TRAC* factors, the Court finds that petitioner has failed to establish the fundamental jurisdictional requirement for the issuance of a writ of mandamus:  the violation of a clear and indisputable duty to act.[9]

---

[8]     Even if this Court were to decide that it lacks sufficient information to declare resource allocation to be the culprit here, and it found the delay to be equally consistent with mismanagement, controlling Circuit precedent would discourage a ruling in plaintiff's favor.  In this situation, where a "judicial decree advancing one applicant" would not cure the agency's "incompetence, if it exists and even if it is severe," the Court has found "no basis for reordering agency priorities."  *Barr Labs.*, 930 F.2d at 76.

[9]     Petitioner maintains that he is entitled to the certificate under the applicable regulations.  Pet. at 2.  However, he does not ask for a certificate in his demand for relief.  *Id.* at 5.  In the event the petition was also intended to secure a declaration to that effect, or an order directing the NLRB to rule in his favor, the Court does not have jurisdiction to do that either.

Whether petitioner should receiver a medical certificate is a discretionary decision.  *See* 49 U.S.C. § 44703(a) (whether an applicant is entitled to a certificate involves an "investigation, that the individual is qualified for, and physically able to perform the duties related to, the position to be authorized by the certificate"); 14 C.F.R. §§ 67.107(a)(4), 67.207(a)(4), 67.307(a)(4) (evidence of recovery from substance dependent must be "satisfactory to the Federal Air Surgeon").  Furthermore, because petitioner's appeal is currently pending before the full NTSB, he has an adequate alternative remedy.  *See Heckler v. Ringer*, 466 U.S. 602, 616 (2013) (mandamus action properly dismissed where plaintiff had an adequate remedy in the form of an administrative appeal).  The full NTSB may reverse the denial and award him the medical certificate.  If the full NTSB upholds the denial, then petitioner can seek judicial review of that decision.  Thus, the Court will also dismiss the petition for writ of mandamus insofar as it is based upon a claim of entitlement to the medical certificate.

**CONCLUSION**

Petitioner has not demonstrated that "the agency's delay is so egregious as to warrant mandamus," *Core*, 531 F.3d at 855, so the Court lacks jurisdiction to order the NTSB to adjudicate his appeal immediately.  Therefore, the motion to dismiss will be **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  November 24, 2020